IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 1:16-CR-00265 |
| v. | ) | |
| | ) | |
| NICHOLAS YOUNG | ) | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS

Defendant Nicholas Young moves to suppress the evidence seized pursuant to search warrants issued pursuant to Federal Rule of Criminal Procedure 41, on the grounds that the applications for the warrants failed to provide probable cause to authorize the seizure of the categories of evidence that the warrants, on their face, authorized the investigators to seize. Dkt. 69. That motion should be denied.

Contrary to Young's claims, Magistrate Judges Buchanan and Anderson were fully justified in finding that the warrant applications supplied ample probable cause. Even if their judgment was wrong and probable cause were lacking, however, the motion still should be denied, because the investigators conducting the searches relied in good faith on facially valid warrants.

Factual Background

On August 2, 2016, United States Magistrate Judge Theresa Carroll Buchanan authorized a criminal complaint signed by FBI Special Agent Martinez, alleging that, from October 2014

through July 28, 2016, Young attempted to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B.  Dkt. 1, 2.[1]

That same day, Judge Buchanan approved a warrant to search Young's residence.  Dkt. 69-3.  The application for that warrant was supported by a separate affidavit of Special Agent Martinez, which expressly incorporated the affidavit submitted in support of the criminal complaint.  *Id.* at 5, ¶ 1.  According to the application for the search warrant, the basis for the search was to find evidence of crimes, specifically: attempting to provide material support to a designated foreign terrorist organization, in violation of § 2339B; obstruction of justice, in violation of 18 U.S.C. § 1512, and false statements, in violation of 18 U.S.C. § 1001.  *Id.* at 4.  In an attachment (hereinafter "Attachment A"), the warrant included a list of items to be seized.  Dkt. 69-3 at 3.  Officers subsequently executed the search warrant and seized multiple items which the defendant now seeks to suppress.[2]

Young was arrested on August 3, 2016.  Dkt. 8.  A search of his backpack incident to arrest revealed (among other items) a receipt for the purchase of ten gift cards, an empty package for an AT&T ZTE GoPhone, and a Casio G'z One flip-phone.  Dkt. 69-4 at 3, ¶¶ 7, 8.  Officers conducted a K-9 sweep of the exterior of the defendant's vehicle, which gave a positive alert for hazardous material.  *Id.* at 5, ¶ 12.  In the course of transporting the defendant's vehicle to a secure location on a flatbed truck, officers found a black AT&T ZTE Go Phone on the bed of the flatbed truck below and between the rear wheels of the defendant's vehicle.  *Id.* at 4-5, ¶ 13.

---

[1] A copy of the Criminal Complaint is attached to this pleading as Exhibit 1.

[2] We understand that the overwhelming bulk of the items that Young seeks to suppress were seized during the search of his residence.

On August 11, 2016, United States Magistrate Judge John F. Anderson approved applications for search warrants for (1) the contents of the backpack (including the black Casio G'z One flip-phone) that Young had with him at the time of his arrest; (2) Young's truck; (3) the black AT&T ZTE Go Phone found on the bed of the truck that transported Young's vehicle on August 3, 2016; and (4) Young's workplace locker, at Franconia/Springfield Metropolitan Transit Police Department's District 2 substation.  Dkt. 69-3, 69-4, 69-5, 69-6, 69-7, 69-8.[3]

In support of the applications, the government submitted an affidavit by FBI Special Agent Caslen, which expressly incorporated the affidavit that Special Agent Martinez submitted in support of the criminal complaint.  Dkt. 69-4 at 3, ¶ 3.  According to the applications, the basis for these searches was to find evidence of attempting to provide material support to terrorists, in violation of 18 U.S.C. § 2339B.[4]  The warrants issued on August 11th contained in Attachment A the same list of items to be seized as did the Attachment A to the warrant issued on August 2nd.  Dkt. 69-5, 69-6, 69-7, 69-8.  Officers executed the warrants and seized multiple items which the defendant now seeks to suppress.

On December 15, 2016, the defendant was indicted on charges of attempting to provide material support to a designated foreign terrorist organization (ISIS) and obstruction of justice. According to the indictment, the time period during which his attempt to provide material support occurred was from December 3, 2015, to August 2, 2016.  Dkt. 38.  Read in conjunction with the allegations in the criminal complaint, the material support charge of the indictment essentially alleged that (a) in December 2015, Young attempted to mislead investigators as to the

---

[3] The United States does not seek to use any evidence seized from Young's workplace locker. As a result, this pleading will not focus on the warrant used to search that locker.

[4] The applications for the search warrants issued on August 11, 2016, are attached to this pleading as Exhibits 3, 4, 5, and 6.

whereabouts of an individual who Young believed to have traveled to Syria to join ISIS, by concealing the actual substance of what Young believed to be his contacts with that individual in 2014 and 2015; and (b) in July 2016, Young attempted to send money to ISIS through the transmission of gift cards to an account that Young believed was controlled by the individual that Young thought had joined ISIS.

Argument

I.    <u>The Search Warrants Were Supported by Probable Cause</u>

    A.  <u>The Legal Standard for Search Warrants</u>

"The Fourth Amendment requires that, in the ordinary course, searches and seizures be conducted pursuant to a warrant issued 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' U.S. Const. amend. IV." *United States v. Qazah*, 810 F.3d 879, 885 (4th Cir. 2015). The test for the necessary particularity of a search warrant is "a pragmatic one: The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved." *Godbey v. Simmons,* 2014 WL 345648 *6 (E.D. Va. 2014 (Ellis, J.), *affirmed,* 577 Fed.Appx. 239 (4th Cir. 2014), *quoting United States v. Davis*, 67 Fed. App'x 771, 777 (4th Cir. 2003) and *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979)).

"In making a probable cause assessment, a magistrate judge must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . , there is a fair probability that contraband or evidence of a crime will be found.'" *United States v. McNeal*, 818 F.3d 141, 150 (4th Cir. 2016) (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "When reviewing a magistrate judge's probable cause determination, a court looks to whether there was a substantial basis for the decision." *United States v. Hurwitz*, 459 F.3d 463,

4

473 (4th Cir. 2006) (internal quotation omitted).  "After-the-fact scrutiny by courts of the sufficiency of an affidavit should accord great deference to the magistrate's determination of probable cause."  *Id.* (quoting *Illinois v. Gates*, 462 U.S. at  236 (internal quotation marks omitted)).

**B.** The Search Warrant Applications Sought Evidence of All of Young's Attempts to Provide Material Support to Terrorists, and Not Just the Gift Card Codes

As a threshold matter, Young's motion incorrectly assumes that the search warrants sought only "evidence of the gift-card charge."  Dkt. 69-1 at 2.  He acknowledges that "[t]he search warrant affidavits incorporate by reference the affidavit filed on August 2, 2016 in support of the criminal complaint," *id.* at 4, but asserts that the affidavits do not "cite a factual basis to find probable cause of any terrorism-related crime beyond the alleged gift-card distribution."  *Id.* at 3.  Young then claims that because the government possessed evidence that he attempted to provide material support to ISIS in the form of gift card codes at the time the warrants were issued, Attachment A's designation of items to be seized was overbroad.  *Id.* at 2.

Young's assumption is incorrect.  First, the complaint charged him with conduct far more extensive than that which occurred on July 28, 2016, when he sent gift card codes to an individual ("CHS") he believed had traveled abroad to join ISIS.   To the contrary, the complaint charged Young with conduct that occurred from "October **2014** through July 28, 2016."  Dkt. 1 (emphasis added).  Indeed, it referenced Young's provision of advice to help CHS join ISIS as early as *August* 2014.  As discussed below, the affidavit in support of the complaint provided probable cause of multiple aspects of an attempt (or attempts) to provide material support to terrorists between August 2014 and July 2016.

Second, the warrants did not even purport to limit the search for evidence of the defendant's conduct that occurred only between October 2014 and July 28, 2016.  Instead, based

on the Attachment A that was common to all of the warrants, the warrants essentially authorized

the government to search for all evidence of (a) the international transfer of money; (b) the

procurement of any item that may have been involved in or in support of terrorist or violent acts;

and (c) any records, documents, or paraphernalia relating to any designated terrorist group, or

any individual or group engaged in terrorism or terrorist activity

To be sure, the warrants certainly sought seek evidence of Young's attempt to provide gift

card codes to ISIS on July 28, 2016.   Nevertheless, the warrants also sought evidence of other

violations of possible terrorist activity involving Young, necessarily including his travel to Libya

in 2011, and his involvement with the Abu Salim Martyr's Brigade since 2011, as well as the

possible attacks on the FBI or courthouse that he hinted at in his conversations with an

undercover law enforcement officer ("UCO") in 2011 and 2012.  As discussed below, the

affidavits provide ample probable cause of such terrorist activity.  As a result, Judges Buchanan

and Anderson rightly authorized the government to search for evidence of such activity,

notwithstanding the fact that the government already possessed evidence constituting probable

cause that Young attempted to send gift card codes to ISIS on July 28, 2016.

    **C.**  The Search Warrant Applications Provided Probable Cause
        to Seize Firearms, Ammunition, Body Armor, Military-Style
        <u>Equipment, and Explosive Materials and Their Precursors</u>

Young challenges the warrants' authorization to seize "[a]ny and all firearms,

ammunition, body armor, military-style equipment, or explosive materials or their precursors,"

Attachment A at ¶ 9, on the ground that the affidavits do not "provide any factual basis to

support a probable cause determination that these items are somehow linked to the cited charges

of attempting to provide material support to a [designated foreign terrorist organization] (18

U.S.C. § 2339B), obstruction of justice (18 U.S.C. § 1512), and false statements (18 U.S.C.

§ 1001)." Dkt. 69-1 at 4. He argues, "All the firearms, ammunition, body armor, and military-style equipment should be suppressed because there was no factual support in the warrant applications to find probable cause they were contraband or evidence of a crime." *Id.* at 14.

Young's argument is baseless. In fact, the affidavits cite ample evidence that he possessed multiple firearms that may have been evidence of an attempt to provide material support to a foreign terrorist organization. Specifically, the August 2, 2016 complaint affidavit states that on March 10, 2011, UCO "reported that Young said that Young despised the FBI, and that someone with Young's skills could attack an FBI establishment." Dkt. 2 at ¶ 12. UCO reported that, in addition to talking about kidnapping and torturing an FBI agent, Dkt. 2 at ¶ 15, Young said, in a discussion about FBI surveillance, that "'we" should pour gasoline on their cars and light them. Dkt. 2 at ¶ 11. UCO further "reported that Young said that firearms are not allowed to be brought into the federal courthouse in Alexandria, but described a method that Young could bring multiple guns into the courthouse undetected in order to distribute them to others inside." *Id.*

The criminal complaint affidavit reflected Young's close contacts with Amine El-Khalifi. Dkt. 2 at ¶ 13, 14, 17, 19. He discussed the fundamentals of marksmenship with Khalifi. Dkt. 2 at ¶ 13. In the context of discussing Khalifi's failure to hide his intent to engage in terrorist actions (and, of course, Khalifi later was arrested wearing a suicide vest on his way into the U.S. Capitol Building, Dkt. 2 at ¶ 22), Young contrasted himself with Khalifi; he said that he himself would never talk about the things that he was going to do, and that people would find out what he was going to do after it happened. Dkt. 2 at ¶ 19. When Khalifi talked about martyrdom, Young told Khalifi that one of the greatest martyrs is a convert who eventually fights the unbelievers for the Muslims. Dkt. 2 at ¶ 17.

The criminal complaint stated that, in November 2015, Young expressed sympathy for the terrorists who murdered approximately 130 people, and stated that the terrorists simply gave the West a taste of what Muslims face every day.   Dkt. 2 at ¶ 46.  It noted that Young dressed up for a Halloween party as Jihadi John, carrying with him an orange jumpsuit stuffed with paper to portray a headless hostage.  It noted that he also dressed as a Nazi, and collected Nazi memorabilia. Dkt. 2 at ¶ 42.

The complaint reflected that UCO further reported that, Young said that if law enforcement searched his home, they would have issues because he was stockpiling weapons. Apparently indicating what actions he would take against law enforcement personnel who attempted to search his house, Young told UCO that is what amphetamines, ballistic vests and assault rifles were for.  *Id.* at ¶ 19.

The affidavit also stated:

> According to an interview with the FBI on September 10, 2011, Young said that he had traveled to Libya twice in 2011 and had been with rebels attempting to overthrow the Qaddafi regime.  Baggage searches conducted by Customs and Border Protection on his outbound travel revealed that Young traveled with body armor, a kevlar helmet, and several other military-style items.  Young was searched upon his return after the May trip, and was found to have brought the body armor back with him.

*Id.* at ¶ 20.

Additionally, in electronic communications between February and July 2015,

> Young asked [a confidential human source (hereinafter "CHS")] to notify Young if CHS encountered any of the mujahideen that Young served with in Libya in the "Abo Salem Suhada Brig."  Based on [the agent's] training, experience, and knowledge of various terrorist organizations, [the agent] believe[d] Young's reference to "Abo Salem Suhada Brig" was a reference to a militia group in Libya that has possible links to al-Qaeda and that is known as the Abu Salim Martyrs Brigade.

*Id.* at ¶ 39.

The affidavit also stated:

> On March 21 and 22, 2015, Young participated during off-duty hours in a weapons training event provided by another Metro Transit Police Department officer. The officer observed Young bring a large amount of ammunition to the training, and operate Young's own firearms, including an Egyptian AK-47, a Kimber 1911 .45 caliber pistol, and an AK-47 AMD rifle. On June 11,2015, the training officer stated that Young said that Young also owned a semi-automatic 5.45 variant AK-47 RPK, an 8mm Mauser rifle, and a World War Il-era Russian Negant rifle.

*Id.* at ¶ 41.

Finally, the August 2, 2016 search warrant affidavit recounted,

> On May 9, 2015, the FBI interviewed an individual who was until recently a close friend of Young. This individual, who I will refer to here as CW, consented to the search of CW's electronic devices, which reflected numerous communications with and photographs of Young. CW allowed the investigators to take photographs of CW's communications with Young. CW said that Young resided in a house that Young had inherited from his parents, at . . . Heron Ridge Drive, in Fairfax, Virginia. CW said that CW had been at Young's residence on many occasions, and that Young maintains several firearms in a gun safe in his residence. CW said that Young once asked CW about the chemical components of gun powder, but that CW refused to answer the question for fear that Young would attempt to make something in CW's residence.

Dkt. 69-3 at ¶ 5.

This information constituted probable cause that Young attempted to provide material support to a designated terrorist group in 2011 when he traveled to Libya and served with mujahedeen fighting on behalf of a militia group that has possible links to al-Qaeda, a designated foreign terrorist organization. The affidavits also provided probable cause to believe that Young possessed body armor and military-type equipment which he used in Libya.

Further, the above-cited information constituted probable cause that Young may have been planning or engaged in other terrorist activity between 2011 and 2016. For example, the defendant claimed to have been stockpiling weapons, discussed a method to bring firearms into

the federal courthouse in Alexandria undetected in order to distribute them, possessed a large amount of ammunition, and asked CW about the chemical components of gunpowder, which led CW to fear that the defendant would attempt to construct "something" (believed to refer to a bomb).[5]

Because the affidavits provided ample probable cause that Young possessed firearms, ammunition, body armor, military-style equipment, and explosive materials or their precursors, and that these items were relevant to possible terrorist activity, Judges Buchanan and Anderson were correct in determining that there was a fair probability that the searches would reveal evidence of a crime. *McNeal*, 818 F.3d at 150 (citing *Gates*, 462 U.S. at 238). In making their probable cause assessments, they made "a practical, common-sense decision" that, "given all the circumstances set forth in the affidavit . . . , there [was] a fair probability that contraband or evidence of a crime [would] be found.'" *Illinois v. Gates*, 462 U.S. at 238. In light of the facts set forth in the affidavits, and notwithstanding the great deference that this Court should have for their determinations of probable cause, *id.* at 236, there clearly was a substantial basis for those decisions. *Hurwitz*, 459 F.3d at 473.

Young's reliance on *Millender v. Cty. of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010), *rev'd*, *sub nom Messerschmidt v. Millender*, 565 U.S. 535, 545 (2012) is misplaced. In that case, the Ninth Circuit concluded that "the deputies had probable cause to search for a single, identified weapon . . . [and] [t]hey had no probable cause to search for the broad class of firearms and firearm-related materials described in the warrant." *Messerschmidt v. Millender*, 565 U.S. 535, 545 (2012). *Millender* does not help Young - - and not only because the Supreme Court

---

[5] The results of the search corroborated this conclusion; officers executing the search seized military equipment sufficient to arm numerous confederates. For example, as just a sampling of the body armor found in his residence, Exhibit 7 is a photo of ten sets of body armor.

disagreed with the Ninth Circuit's analysis.[6]  In contrast to the context of *Millender*, the affidavits in support of the search warrant for Young's residence *did* contain probable cause that the various firearms, ammunition, body armor, military-style equipment, and explosive materials or precursors sought *were* linked to suspected attempts to provide material support to terrorists. After all, as the criminal complaint alleged, Young himself told the UCO that his various weapons could be used to (a) attack an FBI building; (b) kidnap an FBI agent; (c) smuggle guns into the courthouse; (d) fight any FBI attempts to search his house.  Dkt. 2 at ¶¶ 11, 12, 15, 19.

Because the seizure of firearms, ammunition, body armor, military-style equipment, and explosive materials and their precursors was supported by probable cause, the defendant's motion should be denied.  *United States v. Graham*, 275 F.3d 490, 503 (6th Cir. 2001) (upholding search warrant authorizing seizure of all firearms, ammunition, or destructive devices where "the affidavit reported that [the defendant] discussed killing people and 'hitting' targets, creating the inference that he possessed the weapons that would enable him to carry out those objectives").  *See also Mora v. Cty. of Gaithersburg*, 519 F.3d 216, 227-28 (4th Cir. 2008) (police were under no obligation to give an innocent interpretation to the defendant's lawful collection of firearms, and overlook the chemistry equipment and extremist paraphernalia of someone who had threatened to make bombs.).[7]

---

[6] "Even if the warrant in this case were invalid, it was not so obviously lacking in probable cause that the officers can be considered "plainly incompetent" for concluding otherwise." *Messer-schmidt v. Millender*, 565 U.S. at 556 (Roberts, J.); "In my view, given all these circumstances together, the officers could reasonably have believed that the scope of their search was supported by probable cause." *Id.* at 557 (Breyer, J.) (concurring).

[7] In support of its claim that there was no probable cause to seize the firearms, Young cites the fact that the government elected not to pursue their forfeiture.  Dkt. 69-1 at 7.  The government's election to forbear from seeking forfeiture of the firearms avails Young nothing, because the standard for forfeiture is different from the standard for justifying a seizure.  In this case, the government had probable cause to believe the firearms were evidence of a crime when it seized

**D.** The Search Warrant Applications Provided Probable Cause
to Seize Narrowly Tailored Categories of Records and Documents

Young next challenges the warrants' authorization to seize "*all* documents and records pertaining to travel, international transfers of money, *any* account with any service provider, contact lists, and *all* electronic devices." Dkt. 69-1 at 14-15 (emphasis in original). Young reiterates his argument concerning the seizure of firearms, claiming that the warrants failed to link these items to be seized to any terrorism crime or time period. *Id.* at 15. He also argues that the search affidavits did not provide a factual basis that these categories of information constituted evidence of the gift card charge, noting that the government already possessed some evidence in support of that charge. *Id.*

Young's arguments fail for multiple reasons. First, Young again incorrectly assumes that the government was seeking evidence only of the provision of gift card codes to ISIS on July 28, 2016. As discussed previously, the affidavits provide probable cause that the defendant attempted to provide material support to ISIS between October 2014 and August 2016 - - and that he likely provided material support to an affiliate of al-Qaeda as early as April 2011 -- as well as engage in other attempts to support terrorists between 2011 and 2016.

Indeed, in addition to the gift card activity, the August 2, 2016 search warrant affidavit stated that the government sought records from Young's residence that "are likely to be relevant to . . . assets that he sought to send overseas in 2015." Dkt. 69-3 at ¶ 9. The affidavit further stated, "Such records are also likely to be relevant to his contacts with terrorist groups in the past, and his past travel or attempts to travel overseas to fight on behalf of terrorist groups." *Id.*; *see also* Dkt. 69-4 at ¶ 18 (same). In short, Magistrate Judges Buchanan and Anderson clearly

---

them, but, at the time the government declined to pursue forfeiture, it determined that it could not show by a preponderance of the evidence that the firearms were used in a crime.

were justified in authorizing the government to seek "*all* documents and records pertaining to travel, international transfers of money, *any* account with any service provider, contact lists, and *all* electronic devices."

Second, the warrants' authorizations are not general; to the contrary, they are particularized to the suspected terrorist activity detailed in the applications. The items to be seized are clearly "identified by their relation to designated crimes," leaving nothing to officers' discretion. *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010). For example, the warrants authorize the seizure of "[a]ll records and documents . . . that concern the international transfer of money or assets." Attachment A at ¶ 1.

The August 2, 2016 complaint affidavit details that in 2015, Young attempted to obtain information from ISIS commanders on how to move money outside the U.S., and in 2016 sent gift card codes to an individual he believed to be overseas fighting for ISIS, in violation of § 2339B. Dkt. 2 at ¶ ¶ 40, 50.

The warrants authorize the seizure of "all records and documents . . . referring or relating to past travel or planned travel by Nicholas Young." Attachment A at ¶ 3. The affidavit details Young's statements about his multiple trips to Libya in 2011 to serve with mujahedeen fighting on behalf of the Abu Salim Martyrs Brigade, in violation of § 2339B. Dkt. 2 at ¶ 20.

The warrants authorize the seizure of "[a]ny and all records, documents, invoices and materials that concern any accounts with any internet service provider." Attachment A at ¶ 4. The affidavits discuss Young's use of covert email accounts and multiple messaging applications to communicate concerning attempts to provide material support to ISIS, in violation of § 2339B. Dkt. 2 at ¶ 34; Dkt. 69-3 at ¶ 11.

Finally, the warrants authorize the seizure of "[a]ll contact lists . . . of individuals associated with Nicholas Young and/or foreign terrorist groups."  Attachment A at ¶ 6.  The affidavit recounts that "Young asked CHS to notify Young if CHS encountered any of the mujahideen that Young served with in Libya," in violation of § 2339B.  Dkt. 2 at ¶ 39.

Similarly particularized search warrants authorizing the seizure of records, documents, and electronic devices are routinely upheld.  *See*, *e.g.*, *Davis*, 67 Fed. App'x at 777 (holding that a search warrant authorizing the seizure of controlled substances, cash, communication devices, items related to the distribution of controlled substances, identification documents, financial records, travel records, and weapons was sufficiently particularized to limit the scope of the search to evidence of illegal drug trafficking); *United States v. Subasic*, 2011 WL 4055170, at *5 (E.D.N.C. Sept. 12, 2011) (upholding seizure of literature espousing violent jihad, training manuals on military tactics and unconventional warfare, and sniper-related items upon finding that warrants were sufficiently particular because they "limited the agents' search to evidence relating to a 'specific illegal activity,' specifically violations of [18 U.S.C. § 2339A and § 956(a)]") (*quoting United States v. Dickerson*, 166 F.3d 667, 694 (4th Cir. 1999)).  Because the search warrants were sufficiently particularized and supported by probable cause, the Court should deny Young's motion to suppress.

**E.**  The Warrants Properly Authorized the Seizure of Documents
      Notwithstanding the Absence of Date Restrictions

Young further alleges that the warrants were overbroad in authorizing the seizure of documents without date restrictions.  A search warrant may authorize the seizure of items unbound by date restrictions, however, when the government does not know the specific dates of the defendant's illegal conduct or where illegality "permeated" the defendant's conduct.  *Hurwitz*, 459 F.3d at 474 (upholding seizure of all patient files from medical practice because the

"affidavit provided a substantial basis for the magistrate judge to find probable cause that [the

defendant]'s practice was permeated with the illegal distribution of drugs); *United States v.*

*Poulin*, 671 F. Supp. 2d 822, 825 (E.D. Va. 2009) (Davis, J.) (upholding seizure of "files from

2006 to August 2007 even though none of the allegations made in the supporting affidavit

covered this time period").

Although, as discussed previously, the affidavits provided probable cause that Young

attempted to provide material support to terrorist groups on multiple occasions, the government

was not able at the time of the applications to identify the precise occasions when these crimes

occurred, or determine that documentary evidence of these crimes was necessarily limited to

certain time periods.  Indeed, the affidavits allege that the defendant maintained his support for

terrorist organizations over a period of at least five years.  Because "[t]he degree of specificity

required when describing the goods to be seized may necessarily vary according to the

circumstances and type of items involved," *Davis*, 67 Fed. App'x at 777 (quoting *Torch*, 609

F.2d at 1090), Judges Buchanan and Anderson properly authorized the government to seize

evidence unbound by date restrictions but narrowly tailored in terms of subject matter.

**F.**  The Warrant Applications Provided Probable Cause
 to Seize Electronic Devices and Documents Contained Therein

Young also challenges the government's seizure of his electronic devices, arguing that

"where the government attempts to seize the information stored on a computer, as opposed to the

computer itself, the underlying information must be identified with particularity and its seizure

independently supported by probable cause."  Dkt. 69-1 at 17.  But the warrants do just that,

authorizing the seizure of:

> **Any communications or electronic device capable of storing any of the
> items to be seized**, including but not limited to all cellular phones, smart
> phones, electronic data processing and storage devices, computers and

computer systems, keyboards and other associated peripherals, Central Processing Units, external and/or internal drives, portable drives, external and internal storage devices such as magnetic tapes and/or disks or diskettes, together with system documentation, operating logs, software and manuals, passwords, test keys, encryption codes or similar codes that are necessary to access computer programs, **and the stored contents of the items described in this paragraph, which may be searched for only the items listed above**.

Attachment A at ¶ 10 (emphasis added).

The warrants thus grant the government two levels of authorization. First, the government may seize the devices themselves. The affidavits include ample probable cause to justify such seizures. *See*, *e.g.*, Dkt. 2 at ¶ 16 (defendant's use of "burner" phones); *id.* at ¶ 55 (defendant's claim that he was getting rid of the device used to send gift card codes in violation of § 2339B); Dkt. 69-3 at ¶ 11 (defendant's use of electronic devices and sophistication about computer matters); *id.* at ¶ 13 (defendant's use of PlayStation 4 gaming system which has online communication capabilities); *id.* at ¶¶ 14, 15 (agent's belief that the defendant uses and maintains electronic media equipment); Dkt. 69-4 at ¶ 10 (discussing the ability to use tablets—such as the one found in the defendant's backpack through search incident to arrest—to run mobile messaging applications); *id.* at ¶ 14 (stating that the recovered AT&T GoPhone is a prepaid phone readily used as a "burner" phone).

Second, the warrants authorize the government to seize "the stored contents of the items described in this paragraph, which may be searched for only the items listed above." The warrants thus permit the government to search the contents of the seized devices for items listed in paragraphs one through nine of Attachment A. Contrary to the defendant's assertion, the warrants do not permit the government to search seized devices for "anything"—only for the items listed elsewhere on Attachment A. *See Williams*, 592 F.3d at 520 (noting that even though the authorized search necessarily required review of "a large collection of items," the warrant

limited the search and seizure of material on computer systems and digital storage media to information relating to specific offenses).

**G.** <u>No Warrant Was Necessary to Search Young's Vehicle</u>

The motion to suppress the evidence seized from Young's truck can be denied for two independent reasons. First, under the automobile exception to the Fourth Amendment's warrant requirement, if a car is "readily mobile" and probable cause exists to believe it contains contraband or evidence of a crime, a warrantless search is permissible. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999).[8] When the automobile exception applies, officers "may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant." *United States v. Ross*, 456 U.S. 798, 800 (1982). Any defect in the warrant to search the truck is immaterial because probable cause existed to search it anyway. After all, probable cause existed that Young used the truck to travel to the FedEx to send emails to the account he thought was controlled by someone at ISIS, so evidence of those trips likely existed in the truck. Moreover, probable cause existed to search Young's truck, not least because a K-9 sweep of the vehicle's exterior on August 3, 2016, gave a positive alert for hazardous material. Dkt. 69-4, ¶ 12.

Furthermore, the evidence found in the truck cannot be suppressed regardless of the validity of the warrant, because such evidence was found in an inventory search anyway. The inventory search of a seized vehicle is an exception to the Fourth Amendment's warrant requirement. *United States v. Matthews*, 591 F.3d 230, 234-35 (4th Cir. 2009). Officers may remove a vehicle to another location before conducting an inventory search. *United States v.*

---

[8] "[T]he fact that impoundment may have made it virtually impossible for anyone to drive the car away or to tamper with its contents is irrelevant to the constitutionality of a warrantless search" of an impounded vehicle where that search is supported by probable cause. *United States v. Gastiaburo*, 16 F.3d 582, 586 (4th Cir. 1994).

*Murphy*, 552 F.3d 405, 412-13 (4th Cir. 2009). As noted in the affidavit in support of the application for a warrant to search the vehicle, an inventory was taken of the contents of the interior of the vehicle on August 3, 2016.  Dkt. 69-4, ¶ 12,

Each of these exceptions would justify a search of Young's truck even if no valid warrant had been issued to search it.  Accordingly, the defendant's motion to suppress the results of the vehicle search must be denied, even if the Court finds that the vehicle search warrant was not supported by probable cause.

> H.   No Evidence Should Be Suppressed from the Search of the
>       Black AT&T ZTE Go Phone Found on the Bed of the Truck
>       That Transported Young's Vehicle on August 3, 2016

The only items of evidentiary value on the black AT&T ZTE Go Phone that was found on the bed of the flatbed truck beneath Young's own truck consist of Threema messages that were exchanged with the Threema account that Young believed was controlled by a friend serving with ISIS. We do not understand Young's motion as seeking to suppress the Threema evidence on this phone, because such evidence goes directly to the transmission of the gift cards that Young (wrongly) alleges was the only offense for which the government properly sought evidence.  After all, even if evidence was seized that was beyond the scope of the warrant, there would be no call to suppress evidence that properly was within the scope of the warrant.   "As a general rule, if officers executing a search warrant exceed the scope of the warrant, only the improperly-seized evidence will be suppressed." *United States v. Squillacote*, 221 F.3d 542, 556 (4th Cir.2000).

> I.   No Warrant Was Necessary to Search Young's Backpack

The motion to suppress the evidence seized from Young's backpack also can be denied for an independent reason.  "It is well settled that a search incident to a lawful arrest is a traditional

exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224, (1973). This exception provides that when law enforcement officers have probable cause to make a lawful custodial arrest, they may-incident to that arrest and without a warrant-search "the arrestee's person and the area 'within his immediate control.'" *Chimel v. California*, 395 U.S. 752, 763 (1969). "The constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." *Michigan v. DeFillippo*, 443 U.S. 31, 35, (1979). This is a "bright line" rule of constitutional law. *United States v. Porter*, 738 F.2d 622, 627 (4th Cir.1984) (*en banc*).

Searches incident to arrest must be confined to the arrestee's person and the area within the arrestee's "immediate control," which is "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Chimel*, 395 U.S. at 763. This can include a locked bag. *United States v. Silva*, 745 F.2d 840, 847 (4th Cir.1984) (upholding search incident to arrest where officer removed a key from the arrestee's pocket and unlocked a bag sitting next to the arrestee). In this case, the agents initially searched Young's backpack incident to his arrest. As a result, any defect in the warrant that was obtained later is irrelevant to the seizure of evidence (except for the electronic evidence, such as the phone) that was found in the backpack.

II.     Even If This Court Were Now to Find Probable Cause Lacking,
        the Defendant's Motion Should Be Denied Because the Officers
        Conducting the Searches Relied in Good Faith on Facially Valid Warrants

A review of the affidavits submitted in support of the search warrant applications in this case leaves no doubt that the warrants were supported by ample probable cause. But even if probable cause were found wanting, the evidence should not be suppressed pursuant to the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 913,

920 (1984).  In *Leon*, the Supreme Court held that evidence need not be suppressed when the police obtain evidence through objective good faith reliance on a facially valid warrant that is later found to lack probable cause.  468 U.S. at 913, 920.  This "good faith" exception to the exclusionary rule is proper because suppression in this situation would not further the deterrent function of the rule.  *Id.* at 918-20.

 "[A] court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'"  *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (*quoting Leon*, 468 U.S. at 922 n. 23); *accord Qazah*, 810 F.3d at 886 ("[I]n the ordinary course, the exclusion of evidence is not the proper remedy.").

The Supreme Court has reiterated that:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.  As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Herring v. United States*, 129 S.Ct. 695, 702 (2009).

The Supreme Court has identified four situations in which police cannot be found to have acted with "objective reasonableness," and in which *Leon*'s good faith exception is therefore inappropriate: (1) when "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," (2) when "the issuing magistrate wholly abandoned his judicial role," (3) when the warrant was "so facially deficient–i.e., in failing to particularize the place to be searched or the things to be seized–that the executing officers cannot reasonably presume it to

be valid," and (4) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923; *accord United States v. Hyppolite*, 65 F.3d 1151, 1156 (4th Cir. 1995) (quoting *Leon*, 468 U.S. at 923).

In this case, nothing in the record suggests that any of these situations applies, and Young has made no claim to the contrary. Indeed, even the case on which he relies most heavily in arguing for suppression, *Millender v. Cty. of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010), was reversed by the Supreme Court upon its finding that the good-faith exception applied. *Messerschmidt v. Millender*, 565 U.S. 535, 550 (2012) (holding that "it would not have been 'entirely unreasonable' for an officer to believe, in the particular circumstances of this case, that there was probable cause to search for all firearms and firearm-related materials") (citing *Leon*, 468 U.S. at 923). Accordingly, even if the Court were to conclude that the warrants were overbroad or lacking in probable cause, the Court should deny the defendant's motion to suppress. *See also United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993) (denying a motion to suppress on the basis of the "good faith exception" to the exclusionary rule where the search affidavit failed to state the time period during which the illegal activity occurred).

III.   Consideration of Whether Categories of Seized Items Are Beyond the
       <u>Scope of the Warrant is Premature Because That Issue is Not Yet Ripe</u>

Young also claims that entire categories of seized items, such as Nazi paraphernalia, were not within the scope of the warrants, and that their introduction at trial would be unduly prejudicial. *Id.* at 2, 19. Such claims are premature, not least because the government has not yet identified which items seized through the searches it will seek to use at trial; after all, there is

little point in litigating over whether the seizure of a particular item was within the scope of the warrant if the item is not going to be presented at trial anyway.[9]

Moreover, it is impossible to determine whether general categories of evidence are outside the scope of the warrant, because some items within a general category may be encompassed by the scope of the warrant even though others are not.  In addition, the application of the "plain view" doctrine can only properly be applied to individual items of evidence, rather than to categories of evidence.  *Harris v. United States*, 390 U.S. 234, 235 (1968) ("It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence").[10]

Once the government has identified the exhibits it plans to present at trial, Young can challenge the government's use of particular exhibits on the grounds that their seizure was made outside the scope of the warrants, or for any other reason.  In the meantime, the matter before the Court is simply whether the warrants were supported by probable cause (or, if necessary, whether the seizures fit within the good faith exception to the exclusionary rule).

---

[9]  Even at this point, however, we can represent that we will seek to introduce at trial no evidence obtained through the warrant to search Young's locker at the Franconia Springfield Metro station.

[10]  For the plain view exception to the warrant rule to apply, the government must show that: (1) the officer was lawfully in a place from which the object could be viewed; (2) the officer had a "lawful right of access" to the seized items; and (3) the incriminating character of the items was immediately apparent. *United States v. Davis*, 690 F.3d 226, 233, 237 (4th Cir. 2012).  "An item need not itself be contraband before it has an 'incriminating nature,' but instead, an item need only be evidence of a crime." *Id.* at 237.

<u>CONCLUSION</u>

For the foregoing reasons, the defendant's motion to suppress should be denied.

Respectfully submitted,

Dana J. Boente
United States Attorney

Dated: March 3, 2017                    By:    _____/s/_____
                                               Evan N. Turgeon
                                               Special Assistant United States Attorney

                                               Gordon D. Kromberg
                                               Assistant United States Attorney
                                               United States Attorney's Office
                                               2100 Jamieson Avenue
                                               Alexandria, Virginia 22314
                                               Phone: (703) 299-3700
                                               Fax: (703) 299-3981
                                               Email: gordon.kromberg@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2017, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send a notification of filing ("NEF") to

counsel of record for the defense.


By:    _____/s/_____
Gordon D. Kromberg
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: gordon.kromberg@usdoj.gov

24